## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Jamal Britt,

               Plaintiff,       Case No. 1:24-cv-118-MLB

v.

Chandler Durham, et al.,

               Defendants.

_____/

## <u>OPINION & ORDER</u>

For the reasons explained, the Court **GRANTS** Defendants' Rule 12(b)(6) Motions to Dismiss (Dkts. 41 and 53), **DISMISSES** Plaintiff's federal claims for failure to state a claim, and **DISMISSES** Plaintiff's state law claims for lack of subject matter jurisdiction.

## I.  Background

The Court—as it must at this stage—accepts all well-pleaded factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those facts establish that, in 2017, Plaintiff Jamal Britt and Defendant Chandler Durham (professionally known as "Turbo the Great" or "Turbo") created and co-authored *Afghanistan*, a hip-hop song.  (Dkt. 70

¶¶ 23, 35.)  Britt wrote and sung the lyrics, while Durham produced the beat and engineered the song.  (*Id.*)  *Afghanistan* included an introductory tag—"Run that back Turbo"—which has become iconic in the hip-hop industry.  (*Id.*)  Later that year, the two jointly registered a copyright for *Afghanistan.*  (*Id.* ¶ 34; Ex. 2.)[1]  At some unknown time, Durham trademarked the introductory tag.  (Dkt. 70 ¶ 106.)

Durham has since risen to "critical success," signing a co-publishing agreement with Defendant Warner-Chappell Music, Inc.  (*Id.* ¶¶ 36–37.) Durham and Warner-Chappell licensed *Afghanistan* (and by extension the introductory tag "Run that back Turbo") to third parties, mostly artists, production companies, and recording studios.  (*Id.* ¶¶ 30, 39–40.) Durham and the other entities (referred to by Britt as "the Corporate Defendants") included the introductory tag in other songs without Britt's consent and without paying him anything for using the line he originally wrote.  (*Id.* ¶ 38.)  Some of those songs received critical

---

[1] After Defendants moved to dismiss, Britt moved to amend his complaint solely to correct "misnomers and/or misidentifications of certain corporate Defendants."  (Dkt. 68 at 1.)  Defendants did not object, and the Court granted that motion.  (Dkts. 69, October 23, 2024 Docket Entry.) The Court thus cites only the second amended complaint.

acclaim and generated millions of dollars in revenue. (*Id.* at 11–20, ¶ 66.) Durham, for example, helped produce *Drip Too Hard*, a Grammy-nominated song that sold "over 10 million copies." (*Id.* ¶¶ 41–42.) In the complaint, Britt identifies 82 songs that he claims arose from Durham's efforts with the Corporate Defendants and that he collectively refers to as the "Infringing Works." (*Id.* ¶ 38.) The Court refers to them as the subsequent songs.

On January 9, 2024, Britt sued Durham, various fictitious parties, and the Corporate Defendants. (Dkt. 1.) The second amended complaint contains eight counts: (1) declaratory judgment on joint authorship, (2) accounting, (3) copyright infringement, (4) vicarious infringement, (5) false designation of origin, (6) fraud, (7) unjust enrichment, and (8) Georgia common law right of publicity. (Dkt. 70.) Britt also organizes his claims into three groups: claims against all Defendants, claims against Durham, and claims against the Corporate Defendants. (*Id.*) Counts One through Five arise under federal law and Counts Six through Eight arise under Georgia state law.

Durham and the Corporate Defendants moved to dismiss all counts. (Dkts. 41, 53.) Britt opposes. (Dkts. 45, 64.)

## II.    Discussion[2]

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The Court, however, may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

---

[2] The Court has tried its best to understand Britt's theories of liability, but his complaint is challenging.  Each count, for instance, "incorporates" indiscriminately every preceding allegation.  (*See, e.g.*, Dkt. 70 ¶ 119.) The final count—right of publicity—is the most egregious example, spanning 121 allegations for a single claim.  (*Id.*)  The Eleventh Circuit strongly disfavors this "shotgun pleading" practice.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1324–26 (11th Cir. 2021) (defining a shotgun pleading as a pleading "containing multiple counts where each count adopts the allegations of all preceding counts").  Based on Durham's and the Corporate Defendants' motions to dismiss, it appears they have (or believe they have) adequate notice of the claims against them.  *See Yeyille v. Mia. Dade Cnty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016).  So the Court will not dismiss the complaint as a shotgun pleading and has painstakingly tried to make sense of Britt's theories.  To the extent the Court misunderstands anything, the fault lies with Britt.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). At the motion-to-dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). A complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," however, does not satisfy this standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## A. Count One: Federal Declaratory Judgment Action Against Durham and the Corporate Defendants

Britt brings a joint-authorship claim under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Copyright Act, 17 U.S.C. § 101 et seq. He seeks a declaration that, because he initially wrote the line "Run that back Turbo," he is a joint author of all 82 subsequent songs that incorporate the line and "owns an undivided share" in each song. (Dkt. 70 ¶ 76.)

Durham and the Corporate Defendants disagree. Durham claims most of Britt's claims against the subsequent songs are time-barred and

Britt is not a co-author of any of the subsequent songs.  (Dkt. 41-1 at 26, 17.)    Durham further argues that (1) he exercised his rights as *Afghanistan*'s co-author to license the work and create derivative works; (2) the subsequent songs are, at most, derivative works; (3) Britt acquired no rights in the subsequent songs; and (4) Britt fails to allege properly that Britt and the other supposed authors of the subsequent songs intended to create joint work with Plaintiff.  (*Id.* at 17–26.)    The Corporate Defendants contend *all* of Britt's claims are time-barred and, regardless, Britt failed to allege properly the intent of all parties to become joint authors of the subsequent songs with him.  (Dkt. 53-1 at 7–8, 12.)    As part of this, they argue Britt cannot acquire ownership rights in the subsequent songs simply because he co-authored *Afghanistan*.  (*Id.* at 14–16.)    Finally, they say they are immune from liability as lawful licensees.  (*Id.* at 16–18.)

### 1.    Statute of Limitations

"The Copyright Act provides that '[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued.'"  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014) (quoting 17 U.S.C. § 507(b)).  Typically, claims "accrue[]" whenever

"the plaintiff has a complete and present cause of action." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2451 (2024) (quoting *Gabelli v. SEC*, 568 U.S. 442, 448 (2013)). Britt's claim for declaratory relief under the Copyright Act arises from his supposed joint-authorship of the subsequent songs. When "the 'gravamen' of a copyright claim is ownership, the discovery rule dictates when a copyright plaintiff's claim accrues." *Nealy v. Warner-Chappell Music, Inc.*, 60 F.4th 1325, 1330 (11th Cir. 2023) (quoting *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020)). "Under the discovery rule, a copyright ownership claim accrues, and therefore the limitations period starts, 'when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights.'" *Id.*

"'A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred' because '[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'" *Fulton Cnty. v. Wells Fargo & Co.*, 2022 WL 846903, at *4 (N.D. Ga. Mar. 22, 2022) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). "In other

words, '[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that plaintiffs can prove no set of facts that toll the statute.'" *Lindley v. City of Birmingham*, 515 F. App'x 813, 815 (11th Cir. 2013) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005), *abrogated on other grounds as recognized by Walter v. Avellino*, 564 F. App'x 464, 466 (11th Cir. 2014)).[3]

Durham argues that—under the discovery rule—the statute of limitations for Britt's claim began to run on the date each song was released without acknowledging Britt's ownership. (Dkt. 41-1 at 27.) Since Britt filed his original complaint on January 9, 2024, Durham claims the statute of limitations bars any claims for songs released before January 9, 2021 (*Id.* at 28.) In the second amended complaint, Britt identifies the release dates for eight of the songs at issue in this case. (Dkt. 70 ¶¶ 41, 44, 47, 50, 53, 56, 59, 62.) He says each song was released

---

[3] The Court recognizes *Lindley* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

between September 2018 and May 2020.  (*Id.*)  Britt did not allege the release dates for the other 74 subsequent songs.  (*Id.* ¶ 65.)  For them, Durham attaches documents (mostly Wikipedia pages) showing that each song was released before January 9, 2021.  (Dkts. 41-3; 41-4; 41-5.)  He says the Court can rely on those documents in considering his statute of limitations argument.  (Dkt. 41-1 at 28.)

"In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged"—the so-called "incorporation by reference" doctrine.  *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).  Federal Rule of Evidence 201(b) also "provides for taking judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Bryant*, 187 F.3d at 1278.

The Court rejects Durham's argument.  The Wikipedia pages satisfy neither avenue for supplementing the facts at the motion to dismiss stage.  Contrary to Durham's contention, the second amended

complaint's mere reference to the subsequent songs does not incorporate by reference the release dates for each song. *Adamson v. Poorter*, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007) ("A document is not 'central' merely because it is directly responsive to a factual allegation."). Nothing in the second amended complaint incorporates those dates, let alone the Wikipedia pages. In other words, the second amended complaint's reference to the general subject matter of the subsequent songs is not tantamount to incorporation of the release dates set forth in uncorroborated Wikipedia pages. Not even close. *Cf. Cox Enters. v. Hiscox Ins. Co.*, 478 F. Supp. 3d 1335, 1337 n.2 (N.D. Ga. 2020) (considering an insurance policy explicitly referenced by the complaint and central to plaintiff's tort causes of action). And while Courts regularly take judicial notice of websites and webpages, *see, e.g.*, *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019), Britt asks the Court to take judicial notice of the *content* of the webpages. Yet he offers nothing to suggest Wikipedia entries are "not subject to reasonable dispute" or constitute a source "whose accuracy cannot reasonably be questioned." *Bryant*, 187 F.3d at 1278. While a helpful tool, the Court does not find Wikipedia so beyond reproach. *See Stein v. Ala. Sec'y of*

*State*, 774 F.3d 689, 698 n.10 (11th Cir. 2014) ("Wikipedia is not a source that warrants judicial notice."). Indeed, Wikipedia credits itself as a source "edit[able] by anyone with Internet access." Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:About (last visited Nov. 4, 2024). In all, the Court does not consider Durham's cited exhibits to establish the release dates of those songs.[4]

More broadly, however, the problem with Durham's argument is that he conflates the release date of each song with the date on which Britt knew or should have known the Defendants were violating his ownership rights without pointing to any well-pleaded facts to make that connection. It may be that Britt became aware of each song on the exact date each song was released and thus also became aware of his claims on those dates. But no allegations establish that conclusion. Admittedly, Britt alleges in the second amended complaint that some (or perhaps most) of the songs were popular, some selling hundreds of thousands or millions of copies, some being certified platinum or diamond, some

---

[4] The Court also declines to consider new factual allegations Britt includes in an affidavit he filed in opposing Defendants' motions to dismiss. (Dkt. 65.) It considers only Britt's allegations in the second amended complaint.

11

topping music charts, and some even being nominated for Grammy Awards. Perhaps that would provide grounds to conclude Britt or a reasonable person in his position knew or should have known his ownership rights were being violated when the songs were released or shortly thereafter. And Britt alleges in the second amended complaint that he is a "Recording Artist, Songwriter and Entertainer" in Atlanta, a hub city for hip-hop. (Dkt. 70 ¶ 34.) So that might also suggest he knew about the songs close to the release dates. But these allegations of popularity, commercial success, and Britt's employment do not establish beyond doubt when a reasonable person in Britt's shoes would have known his ownership rights were being violated. Nor is the window between this supposed discovery and time of filing long enough to permit an unavoidable inference that Britt should have known. *Cf. Lott-Johnson v. Est. of Goreau*, 2015 WL 4389979, at *4 (N.D. Ga. July 15, 2015) (imparting notice of copyright infringement where plaintiff failed to act for eighteen years from such date). At any rate, Durham does not even make those arguments. The discovery rule analysis focuses on what Britt (or a reasonable person) knew or should have known. *Webster*, 955 F.3d at 1276 (looking at communication with plaintiff and other evidence of

12

plaintiff's awareness of potential infringement).    Durham's simple reliance on the release dates with no further discussion is insufficient to show the statute of limitations bars Britt's claims.

The Corporate Defendants make a similar but slightly different argument.  They contend Britt's claim accrued only once—"the first time he knew or had reason to know that the introductory tag was being used in new works without any attribution to him."  (Dkt. 53-1 at 20.)  They argue this occurred in 2018 upon the release of *Drip too Hard*, the first song that allegedly interfered with his ownership rights.  (*Id.*)  Without deciding whether Britt's claims accrued only upon the release of the first song or with the release of each different song, the Corporate Defendants' statute of limitations argument fails for the same reason Durham's argument fails: the lack of allegations in the second amended complaint establishing that Britt knew or should have known of the alleged infringement upon release of the first song.

Because Britt's allegations in the second amended complaint do not establish a time bar as a matter of law, the Court rejects Durham's and the Corporate Defendants' statute of limitations arguments.

## 2.    Sufficiency of the Allegations

As explained, Britt seeks a declaration that he is a joint author of all 82 subsequent songs in which Durham and/or the Corporate Defendants used the tag line "Run that back Turbo." (Dkt. 70 ¶ 76.) The Copyright Act states that "[t]he authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201. It defines "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The Copyright Act, however, "does not define joint authorship *per se*." *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1492 (11th Cir. 1990). Other courts have developed a framework, concluding co-authorship claimants "bear[] the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) (citation omitted); *see also Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061,

1071 (7th Cir. 1994); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1271 (9th Cir. 2000) (establishing a similar four-part test).

The Eleventh Circuit has not adopted this or any other framework for analyzing co-authorship claims. But several district courts within the circuit have applied it. *See, e.g.*, *Quinn v. Powell*, 2022 WL 1664554, at *3 (N.D. Ga. May 25, 2022); *Seventh Chakra Films, LLC v. Alesse*, 666 F. Supp. 3d 1250, 1262 (S.D. Fla. 2023); *Gordon v. Lee*, 2007 WL 1450403, at *8 (N.D. Ga. May 14, 2007). In the absence of any prohibition from the Eleventh Circuit, this Court adopts the same test as a faithful application of the statutory language, particularly the definitional requirement that authors of "joint work" must have the "intention" to join or merge their individual contributions into a single work. The intent element focuses "on the parties' intent to work together in the creation of a single product." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009). The "factual indicia of ownership and authorship, such as how a collaborator regarded herself [or himself] in relation to the work in terms of billing and credit, decision making, and the right to enter into contracts," may demonstrate the parties'

15

intentions.  *Brooks v. Dash*, 852 F. App'x 40, 41 (2d Cir. 2021) (quoting *Thomson*, 147 F.3d at 200).

Defendants say the Court should dismiss Britt's declaratory judgment claim because he fails to plead adequately that each Defendant intended to be a co-author of the subsequent works with him.  Defendants cite *Quinn v. Powell*, 2022 WL 1664554 (N.D. Ga. May 25, 2022), in support of their argument.  (Dkts. 41-1 at 23–25; 53-1 at 13–14.)   In *Quinn*, three artists co-wrote and co-produced a song.  2022 WL 1664554, at *1.  One of the artists later collaborated with a new artist to generate a new song using the original lyrics.  *Id.*  The two uninvolved original artists sued under the Copyright Act for a declaration that they were joint owners and co-authors of the second song.  *Id.*  Applying the same framework the Court has adopted, the *Quinn* court recognized that all three artists "made independently copyrightable contributions" to the original song and that the original song made "clearly copyrightable contributions" (with the new artist) to the second song.  *Id.* at *3.  But the court also recognized the plaintiffs failed to plead the new artist intended to be co-authors of the new song with them.  *Id.*  The plaintiffs might have alleged the new artist intended to be a co-author with the one

original artist, but they did not allege the new artist intended to be co-authors with them (since they were not involved in the new song). Even in the face of substantial overlap in the lyrics (as opposed to an overlap of just four words in this case), the court concluded the plaintiffs' failure to allege the new creator's intent to be co-authors with them prevented them from stating a claim of joint ownership. *Id.* at *3.

The same rationale applies here. Britt fails to assert adequately that the Corporate Defendants or Durham intended to share co-authorship of the subsequent songs with him. Britt includes almost no allegations to suggest this intent. In arguing otherwise, Britt provides a string cite of ten allegations. (Dkt. 64 at 12.) But those allegations say nothing about Durham's or the Corporate Defendants' intentions to be co-authors with him. Indeed, one allegation recites the initial creation of *Afghanistan.* (*Id.* (citing Dkt. 70 ¶ 35).) The remaining citations repeat the conclusion that either Durham or the Corporate Defendants "used the extrapolation of Plaintiff's Original work" in the listed songs "as an artistic element and identifying tagline." (*Id.* (citing Dkt. 70 ¶¶ 42, 45, 48, 51, 54, 57, 60, 63, and 65).) None of these allegations, however, supply the intermediate link: that the Defendants intended co-authorship in the

subsequent songs with Britt. Regardless of his copyright or joint-author status in the original work, Britt must still plausibly allege Durham and the Corporate Defendants had the shared intent to be co-authors with him in the *subsequent* songs. *Erickson*, 13 F.3d at 1068. He has not done that.

Indeed, Britt's allegations largely disavow any co-authorship intention. Britt alleges he was "never given notice that his voice was being used," indicating his lack of any involvement in production of the subsequent songs. (Dkt. 70 ¶ 33.) And he says nothing about what Defendants understood about Britt's involvement. Perhaps allegations that the Defendants offered him billing credit or otherwise interacted with him could allege plausibly the requisite intent even without Britt's direct involvement in making the songs. *UIRC-GSA Holdings, Inc. v. William Blair & Co.*, 264 F. Supp. 3d 897, 902 (N.D. Ill. 2017). But Britt includes no such allegations. (Dkt. 70 ¶¶ 26, 29.)

Britt's declaratory judgment claim fails as a matter of law. [5]

---

[5] The Court's conclusion obviates the need to address Durham's alternative arguments that the subsequent songs are "derivative works" and that the tag is not "independently copyrightable." (Dkt. 41-1 at 12.)

**B.     Count Five: False Designation of Origin under Lanham Act Against Durham**

Britt also brings a claim against Durham for false designation of origin under the Lanham Act.  (Dkt. 70 at 29.)  Section 43(a) of the Lanham Act creates a civil cause of action against any person who, when selling any goods, "uses in commerce . . . any false designation of origin" that "is likely to cause confusion . . . as to the association of such person with another person or as to the origin . . . of his or her goods." 15 U.S.C. § 1125(a)(1)(A).  To state a traditional false designation claim, "a plaintiff must show (1) that the plaintiff had enforceable . . . rights in the mark or name and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two."  *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011).

Britt alleges Durham registered the phrase "Run that back Turbo" as a trademark, that both Plaintiff and Durham distribute music to the public, and that, by including the introductory tag in the subsequent songs, Durham "created a likelihood of confusion as to the origin" of the subsequent songs.  (Dkt. 70 ¶ 108.)  Durham moves to dismiss on the grounds that Britt fails to allege he has trademark rights to the introductory tag and, in fact, concedes Durham trademarked the line.

19

(Dkt. 41-1 at 30–32.)   In response, Britt insists he asserts a so-called "reverse-passing-off" claim under the Lanham Act.  (Dkt. 45 at 17-19.)  A reverse-passing-off occurs when a "producer misrepresents someone else's goods or services as his [or her] own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003).   To state a reverse-passing-off claim, a plaintiff "must allege the following: (1) that the item at issue originated with the plaintiff; (2) that the origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by" such designation of origin. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1290 (S.D. Fla. 2001).

Britt fails to state a reverse-passing-off claim for two reasons.  First, such a claim arises from the core allegation that a plaintiff originated an item at issue, but the defendant passed the item off as its own.  *See id.* (requiring "the item at issue originate with plaintiff").  Britt alleges just the opposite—that the Corporate Defendants and Durham created the subsequent songs.   And Britt repeatedly alleges they claim sole ownership of the subsequent songs.  Britt's claim to the introductory tag cannot revive this claim as he conceded Durham trademarked it.  The

facts alleged simply don't give rise to a plausible allegation that Durham seeks to pass of Plaintiff's item as his own.

Second, and more importantly, Britt's claim stretches a reverse-passing-off claim beyond the bounds of the Lanham Act as established by the Supreme Court. In *Dastar Corp.*, the Supreme Court considered whether an original producer of a television series could maintain a reverse-passing-off claim against a company that used the original footage in subsequent—and significantly altered—videotapes without providing credit to the original creator. *Id.* at 27. In rejecting such a claim, the Supreme Court analyzed the meaning of the terms "origin" and "goods" as used in the Lanham Act. The Supreme Court concluded the term "origin" refers to "that from which anything primarily proceeds" or its "source" and that the term "goods" refers to "wares" or "merchandise." *Id.* at 31. Putting the terms together, the Court held the term "origin of goods" refers to "the producer of the tangible product sold in the marketplace"—in that case, the videotapes the defendant sold. *Id.* The Court concluded that definition could be stretched to include the trademark owner of the item produced. *Id.* But the statutory language "origin of goods" could not be stretched to include "the person or entity

that originated the ideas or communications that the 'goods' embody or contain"—in that case, the original producer of the television series that was copied (in large part) into the videotapes. *Id.* The Supreme Court reiterated that the phrase "origin of goods" refers "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

That holding precludes Britt's claim here. Britt is not the "origin" of any of the subsequent songs in this case. He concedes this by alleging Durham, the Corporate Defendants, and others created those songs. And he does not allege they falsely represented that fact. Britt is like the plaintiff in *Dastar*. Britt (like that plaintiff) claims he originated a component (the introductory tag "Run that back Turbo") and that someone else then incorporated that original item into something new (the subsequent songs). Britt (like the Plaintiff in *Dastar*) may have been the "originator of the ideas or communication that the good embodies or contains," but that is not enough to state a claim under the Lanham Act.[6]

---

[6] The claim in *Dastar* involved a work in the public domain after the expiration of copyright protection. The Supreme Court, however, "gave no indication that its holding would be affected by the presence of a viable copyright" and thus "the Court's interpretation of 'origin' does not depend

Citing *Montgomery v. Noga*, 168 F.3d 1282, 1298 (11th Cir. 1999), Britt argues "the act of placing a copyright notice on an infringing product can be a false designation" under the Lanham Act. (Dkt. 45 at 18.) Britt's assertion is irrelevant to his allegations here. He alleges the Defendants' act of "attaching [Britt's] recorded voice to the sound recordings" (not a false copyright) created a likelihood of confusion. (Dkt. 70 ¶ 108.) The introductory tag "Run that back Turbo" contains no reference to a copyright or other intellectual property right. And Britt contends Durham registered the trademark.

In any event, *Montgomery* does not stand for the principle Britt alleges. In that case, the plaintiff created a software program that enabled someone to view photographs on a computer. 168 F.3d at 1286. Without the plaintiff's permission, the defendants used the software as a utility on compact discs that contained erotic images. *Id.* at 1287. The defendants activated a feature of the software that caused the plaintiff's copyright notice to disappear. *Id.* The defendants argued the plaintiff's

_____

on the copyright status of the plaintiff's creative material." *Hustlers, Inc. v. Thomasson*, 2004 WL 3241667 at *3 n.1 (N.D. Ga. Dec. 29, 2004) (citation omitted).

23

Lanham Act claim failed as a matter of law because the "act of omitting a copyright notice alone cannot constitute a [Lanham Act] violation." 168 F.3d at 1297. The Eleventh Circuit observed, however, that the defendants' argument "mischaracter[ized] the facts." *Id.* The defendants' argument overlooked various *other* actions and statements constituting "false designation of origin," most importantly evidence each disc included a help menu (owned and copyrighted by the plaintiff) on which one of the defendants (wrongfully) claimed ownership and a copyright. *Id.* at 1297. The Eleventh Circuit held such a claim of ownership was sufficient to allege a false designation claim under the Lanham Act. *Id.* at 1298. That case does not support Britt's specific claims, and the Court concludes Britt fails to state a reverse-passing-off claim under the Lanham Act.

### C.  Counts Three and Four: Copyright Infringement and Vicarious Infringement Against Corporate Defendants

Britt alleges two copyright infringement claims against the Corporate Defendants: traditional copyright infringement and vicarious infringement. (Dkt. 70 at 24–25.) On the first, Britt alleges he was a "joint author" of the subsequent songs, that "joint authors cannot transfer . . . or license the ability to use the copyrighted work on an exclusive basis

to a third party," and that Durham "entered into agreements purporting to transfer or license the entire interest" in the subsequent songs to the Corporate Defendants. (*Id.* ¶¶ 87–88.) In his vicarious infringement claim, he alleges that Durham "direct[ly] infringe[d] . . . Plaintiff's copyright interests by exclusively . . . licensing" the "sound recordings"; that the Corporate Defendants "had the ability to . . . control" Durham and his "distributing" or "commercializing" of the "sound recordings"; and that the Corporate Defendants tolerated and reaped a financial windfall from the alleged infringements. (*Id.* ¶¶ 95–97, 100.)

### 1.    Copyright Infringement

A direct copyright infringement claim requires Britt to show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218, 1223 (11th Cir. 2008). As the Court already concluded, Britt has not sufficiently alleged ownership in the subsequent songs.[7] Significantly, Britt also does not allege infringement

---

[7] In his copyright claim, Britt alleges all contributions to the subsequent songs "were provided with the intention of having them merged together

of the underlying copyright for *Afghanistan*. His allegations refer to the joint authorship of the "sound recordings listed herein," meaning the subsequent songs. (Dkt. 70 ¶¶ 84–87.) So, to the extent his claim for copyright infringement arises from the alleged joint-authorship of the subsequent songs for which he has no ownership, his claim fails.

Britt then charts another path, alleging Durham "entered into agreements purporting [to] transfer or license[]" exclusively "the entire interest" of *Afghanistan*. (*Id.* ¶ 88.) He alleges Durham did not have the right to do that and, therefore, the licenses "effectively infringed upon" his "exclusive right to distribute his work." (*Id.*) While a little difficult to understand, Britt seemingly claims the Corporate Defendants used the copyrighted work under exclusive licenses, thus infringing his copyright.

Britt and Durham co-wrote *Afghanistan* and are co-owners of the copyright. 17 U.S.C. § 201. Copyright owners have "the exclusive rights to do and to authorize" certain actions. 17 U.S.C. § 106. This includes

---

to achieve primary significance of completing each work." (Dkt. 70 ¶ 85.) This vague assertion does not plausibly allege the Defendants' intent to be co-authors with Britt on the subsequent songs. *Iqbal*, 556 U.S. at 678. And even if it did, Britt does not include this allegation in his declaratory judgment claim regarding co-ownership.

the right "to distribute copies . . . of the copyrighted work to the public" by specific transfers of ownership.  17 U.S.C. §§ 106(2), (3).  "Owners may license others to exercise these rights . . . ."  *Davis v. Blige*, 505 F.3d 90, 98 (2nd Cir. 2007).   "There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right . . . to use the copyrighted material" under terms of the license.  *Id.* at 99.  Although a co-owner cannot unilaterally grant an exclusive license, the "co-owner may grant a non-exclusive license to use the work unilaterally."  *Id.* at 100.  "A valid license of either sort immunizes the licensee from a charge of copyright infringement."  *Id.* (citation omitted).

Again, Britt seems to suggest Durham granted the Corporate Defendants exclusive licenses over the entire copyright, which would have required Britt's consent as co-owner.  (Dkt. 70 ¶ 87.)  But, as the Corporate Defendants accurately observe, Britt contends Durham granted numerous licenses.  He seems to allege Durham granted an exclusive license to the producer of each one of the subsequent songs, many of whom are different entities.  Britt does not explain how Durham

could have granted an exclusive again and again to different entities. *See Exclusive License*, Black's Law Dictionary (11th ed. 2019) ("A license that . . . prohibits the licensor . . . from granting the right to anyone else; esp. such a license of copyright . . . ."). His allegation that each license was "exclusive" is conclusory and not plausible. Britt drives this point home by claiming he needs discovery "to assess what rights the Corporate Defendants have" and perhaps show Durham did not "rightfully" license the original song. (Dkt. 64 at 12.) But "[d]iscovery follows a well-pleaded complaint; not the other way around." *Carter v. Dekalb Cnty.*, 521 F. App'x 725, 729 (11th Cir. 2013). His allegations are insufficient.[8] The

---

[8] Even if Durham tried unilaterally to pass numerous exclusive licenses over the entire work, that would be ineffective. *See Davis,* 505 F.3d at 99 ("An owner may not, however, convey the interests of his fellow co-owners without their express written consent, even if the transferee has no notice of the non-consenting owners' interest."); *see also Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014) ("Accordingly, the only way for truly exclusive rights to be conveyed to a joint work is for all co-authors to consent to such an exclusive conveyance."); 1 Nimmer on Copyright § 6.12[C][3] (2024) ("Since . . . a grant executed by less than all of the joint owners of a copyright is necessarily non-exclusive, it follows that any such grant constitutes a non-exclusive license."). Durham cannot pass more rights than he owns because he "failed to obtain [Britt's] consent." (Dkt. 70 ¶ 31.) Assuming the truth of Britt's allegations, any purported "exclusive" license that Durham tried to pass would only constitute a non-exclusive license. Durham had the right to do that.

license that Britt alleges Durham granted the Corporate Defendants immunizes them from any infringement claim. *Davis,* 505 F.3d at 100. Britt, therefore, fails to state an infringement claim against those Defendants.

### 2.    Vicarious Infringement

"Liability for vicarious copyright infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007) (quoting *Mayer Studios Inc. v. Grotsker, Ltd.*, 545 U.S. 913, 931 n.9 (2005)); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (explaining vicarious liability exists "if [someone] enjoys a direct financial benefit from *another's infringing activity*") (emphasis added). As here, "[t]he lines between direct infringement . . . and vicarious liability are not clearly drawn." *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (quoting *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 435 (1984)).

As already explained Durham (as co-owner of the copyright) had the authority to grant licenses. So the Corporate Defendants could not

have benefited from the acts of an infringer. And even if Britt has properly alleged Durham improperly granted multiple exclusive licenses over his interest, that would not matter because Durham only had the ability to offer non-exclusive licenses. No matter the analysis, Britt has failed to allege adequately that the Corporate Defendants benefitted from Durham's improper infringement of the copyright he co-owned.

### D.    State Law Claims (Counts Two, Five, and Eight)

Britt alleges this Court has supplemental jurisdiction over his Georgia state law claims for accounting (Count Two), fraudulent misrepresentation (Count Six), unjust enrichment (Count Seven), and right of publicity/misappropriation of likeness (Count Eight). (Dkt. 70 ¶ 1.) Neither party addresses whether the Court should continue to exercise supplemental jurisdiction, so the Court raises the issue itself. *Miller v. City of Fort Myers*, 424 F. Supp. 3d 1136, 1152 (M.D. Fla. 2020); *see Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 775–77 (11th Cir. 2016) (affirming district court's "sua sponte declin[ation] to exercise supplemental jurisdiction").

A federal court has the discretion to decline supplemental jurisdiction when it has dismissed all claims over which it has original

jurisdiction. 28 U.S.C. § 1367(c)(3). "In making this decision, the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1123 (11th Cir. 2005). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claim." *Bruce v. U.S. Bank Nat'l Ass'n*, 770 F. App'x 960, 966 (11th Cir. 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Indeed, "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims.'" *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). That is so because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726. Because Britt failed to allege adequately any federal claims, the Court will not exercise supplemental jurisdiction over the state law claims.

This is a classic case in which declining to exercise supplemental jurisdiction is warranted. Britt's remaining claims arise entirely under

state law.  The principal actors, Britt and Durham, appear to reside in Georgia, which is where many events underlying this lawsuit occurred. (*See, e.g.*, Dkt. 70 ¶¶ 3–5.)    And the case is still in its early stages—discovery has not begun.  (Dkt. 42.)  Furthermore, Britt's claim that Defendants violated his right to publicity by appropriating his voice for financial gain "raises a novel or complex issue of state law."  28 U.S.C. § 1367(c)(1).  While Georgia courts recognize the common law right of publicity, *see Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 296 S.E.2d 697 (Ga. 1982), the parties disagree as to whether that right extends to the alleged "misappropriation of voice." (Dkts. 53-1 at 26; 64 at 22.)  A Georgia court should answer that question. The Court, therefore, will not exercise supplemental jurisdiction over any state law claims.[9]

## III.  Conclusion

The Court **GRANTS** Durham and the Corporate Defendants' Motions (Dkts. 41 and 53) and **DISMISSES** the Lanham Act claim **WITH PREJUDICE** and the other federal claims **WITHOUT**

---

[9] In the light of the Court's conclusions, it need not reach Defendants' preemption arguments.

**PREJUDICE**.  The Court **DISMISSES WITHOUT PREJUDICE** all remaining state law claims for lack of subject matter jurisdiction.  The Court **DIRECTS** the Clerk to close this case.

      **SO ORDERED** this 7th day of March, 2025.

                         _____
                         MICHAEL L. BROWN
                         UNITED STATES DISTRICT JUDGE